**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-20-0000175
06-APR-2023
07:50 AM
Dkt. 33 OPCD**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

BRANDON FETU LAFOGA and RANIER INES, also known as Schizo,
Petitioners/Defendants-Appellants.

SCWC-20-0000175

CERTIORARI FROM THE INTERMEDIATE COURT OF APPEALS
(CAAP-20-0000175, CAAP-20-0000589; CASE NO. 1PC161001176)

APRIL 6, 2023

CONCURRING AND DISSENTING OPINION BY WILSON, J.,
ASSIGNED BY REASON OF VACANCY

## I.    INTRODUCTION

The Majority condones an anonymous jury[1] that violates

the defendants' fundamental right to twelve impartial judges of

---

[1]      "Anonymous jury" is the appropriate categorization of the jury empaneled in the instant case.  The term "anonymous jury" encompasses "various situations where courts withhold juror information":

continued...

the facts guaranteed to them by the sixth amendment of the

United States Constitution and article I, section 14 of the

Hawai'i Constitution.  By assuming, without evidence, that the

defendants are perceived as dangerous by the twelve citizens who

will decide their guilt or innocence, the Circuit Court of the

---

...continued

> For example, in State v. Sandoval, 280 Neb. 309, 788 N.W.2d
> 172 (Neb. 2010), the court explained, "[t]he term
> 'anonymous jury' encompasses the withholding of a broad
> spectrum of information.  Generally, an 'anonymous jury'
> describes a situation where juror identification
> information is withheld from the public and the parties
> themselves.  The least secretive form of an anonymous jury
> is where only the jurors' names are withheld from the
> parties.  This procedure may also be called an innominate
> jury or, if jurors are referred to by number rather than
> name, a numbers jury." Here, we refer to what the County
> Court did as empaneling an anonymous jury, because the
> court referred to the prospective jurors by assigned
> numbers and not by their names.

People v. Flores, 62 N.Y.S.3d 68, 73–74 (N.Y. App. Div. 2017), aff'd, 114
N.E.3d 141 (N.Y. 2018) (cleaned up and emphases added).

       The jury in the instant case is thus properly classified as an
anonymous jury, where the jurors' names and personal information were
withheld from the defendants, the public, and the press, and jurors were
referred to by number only.  See id. ("Here, we refer to what the County
Court did as empaneling an anonymous jury, because the court referred to the
prospective jurors by assigned numbers and not by their names.") (emphasis
added).
       The Majority incorrectly concludes that the jury was not anonymous.
The Majority claims that "[t]his case's jury is better described as a
confidential jury" that "withholds a juror's name from the public, but not
the parties."  The Majority's characterization of the record is incorrect.
Defendants Brandon Lafoga and Ranier Ines were completely denied access to
any part of the prospective jurors' names.  Such a misinterpretation of the
record ignores the threat to a fair trial posed by keeping anonymous the
quintessential information needed by the accused to determine if the judge is
fair—the identity of the twelve people sitting in judgment.

First Circuit ("circuit court")[2] also deprived defendants of the constitutional right to be presumed not guilty in violation of article I, section 14 of the Hawai'i Constitution. The unjustified withholding of jurors' names from the defendants further violated article I, section 14 of the Hawai'i Constitution by unduly restricting voir dire, which deprived the defendants of effective assistance of counsel. In addition, the circuit court's belief that the jurors would be afraid to serve on this jury infers that the defendants were deprived of their right to an impartial judge, in violation of article I, section 5 of the Hawai'i Constitution. Each of these errors are structural.

Structural error is an error of magnitude that threatens the very fairness of the trial process. No justification or evidentiary weighing can render the breach of such fundamental fairness inconsequential. The error cannot be justified on appeal by a finding that the error was "harmless". Structural error "'affec[ts] the framework within which the trial proceeds,' and is not simply 'an error in the trial process itself.'" State v. Reed, 135 Hawai'i 381, 386, 351 P.3d 1147, 1152 (2015) (citing State v. Ortiz, 91 Hawai'i 181, 193,

_____

[2] The Honorable Paul B.K. Wong presided.

981 P.2d 1127, 1139 (1999) (quoting Arizona v. Fulminante, 499 U.S. 279, 310 (1991))).  The commission of structural error requires that the victim of the error receive a new trial.

Secreting the identity of judges erodes public confidence in our judiciary.  Any attempt to do so requires this court's highest scrutiny.  Without any evidence of danger posed by the defendants to the jury, the court cannot contravene the presumption of innocence by creating an atmosphere of presumed guilt as an excuse to conduct the adjudication of guilt behind the cloak of anonymity.  The tradition of identified judges and jurors is a centerpiece of fairness in our criminal justice system.  A defendant has "a right to a jury of known individuals . . . because the verdict is both personalized and personified when rendered by 12 known fellow citizens."  United States v. Sanchez, 74 F.3d 562, 565 (5th Cir. 1996).  The circuit court's failure to honor Brandon Lafoga's and Ranier Ines' constitutional rights to (1) the presumption of innocence, (2) an impartial jury, (3) the effective assistance of counsel, and (4) an impartial tribunal is an abuse of discretion that necessitates a new trial for defendants.  I respectfully dissent.

## II.  DISCUSSION

### A.  The circuit court violated the defendants' presumption of innocence and the right to an impartial jury.

Approximately two weeks before trial in the instant case, the circuit court *sua sponte* insisted on redacting all identifying information about prospective jurors from the juror questionnaires provided to the parties.  With no explanation as to why, the circuit court informed the prosecutor, defense counsel and defendants that the prosecution and defense counsel would receive the prospective juror questionnaires, yet "all identifying information will be redacted:  phone numbers, street addresses, zip codes and their towns . . . and [c]ourt will redact their names as well."  (emphasis added).  Prospective jurors would be referred to by number only.

The unilateral action of the judge was immediately recognized by the attorneys as improper.  The prosecution objected to the anonymous jury on the grounds that the process was incredibly dehumanizing to the jurors, telling the court "I do object to that because I think it's incredibly -- in my respectful opinion, I think it's dehumanizing."  Ines' counsel joined the prosecution's objection, adding her specific concerns that the parties needed to know who the prospective jurors were in order to effectively prepare for voir dire, and identify any potential bias in the jury.  To that end, Ines' counsel informed

the circuit court "I do agree with [the prosecution's] concern.[3] But if -- my concern is, we need to know who [the jurors] are for our research purposes and preparing voir dire. In other words, is there a conflict of interest or potential conflict of interest? Do I know the juror, that's what I'm mainly concerned about." (Emphases added). In an attempt to obtain the names of the jurors for all parties, Ines' counsel assured the circuit court that she would have no objection if the judge simply "prefers that we not say the juror's name on the record[.]" The circuit court still insisted on withholding the jurors' names.

For the State and the defense, it was clear: because there was no indication that the jurors would be afraid of the defendants, there was no reason to deprive the defendants of knowledge of the names of the twelve judges of the facts. Because the circuit court insisted on juror anonymity, the prosecution inquired as to why. Without pointing to any evidence, inference, or allegation of any potential threat to the jury, the judge explained: "I'm trying to head off a juror in this panel saying, I'm afraid to serve."

---

[3] It is clear that Ines' counsel immediately joined the prosecution's objection to an anonymous jury with the phrase "I agree with [the prosecution's] concerns" followed by additional reasons why the court's anonymous jury was objectionable (including counsel's need to prepare for voir dire, and to identify any conflicts of interests).

In response to the circuit court's groundless insistence on an anonymous jury, Ines' counsel again sought to minimize prejudice to the defendants. To that end, Ines' counsel requested that the circuit court at least supply the names of the prospective jurors to counsel, who would then be required to keep the names secret from the defendants. The circuit court ultimately agreed: it would provide to the prosecution and defense attorneys the list of prospective jurors' names with "street addresses and telephone numbers still redacted." In so doing the circuit court immediately acted in favor of the government. The prosecution was permitted to know the identity of the twelve judges of the facts; the defendants themselves were not. Preserving this imbalance, the circuit court instructed defense counsel to keep the names of the jurors secret from their clients: the jurors would remain anonymous to the defendants, the public, and the press…but not to the prosecution.

Faced with the circuit court's insistence on anonymity, Ines' counsel made one final effort to mitigate the prejudice to the defendants the anonymous jury would pose. Specifically, she requested that the circuit court take the reasonable precaution to "explain[] to the jury the reason why" they would be referred to by number only "and that it's not meant to be offensive." (Emphases added). The judge declined

7

this request, stating that while he would explain to the jurors that they would be given numbers, he would not provide a rationale to the jury for why their identities would be kept anonymous:  "I don't want to give them the [c]ourt's rationale as to why we're not referring to their names in court." (Emphasis added).

Over objection of counsel the jurors' names and personal identifying information were completely concealed by the court from all persons and parties to the case, other than the circuit court and counsel, and the jurors were not to be given an explanation as to why.

Thus, Lafoga and Ines were deprived of the critical knowledge of the identity of the twelve judges who sat as jurors to determine whether they were guilty or innocent of the array of charges brought against them:  attempted murder in the second degree, conspiracy to commit murder in the second degree, kidnapping, robbery in the first degree, carrying or use of firearm in the commission of a separate felony, and ownership or possession prohibited of any firearm or ammunition by a person convicted of certain crimes (felon in possession).  The ordinary maximum sentences for these charges ranged from five-year to twenty-year terms of imprisonment; extended maximum sentences would expose the defendants to life in prison without the possibility of parole.

The twelve judges who were never known to the defendants ultimately found them guilty.[4]  In accordance with the further request of the prosecutor who was privy to their identity, the twelve people who anonymously declared the defendants guilty thereafter also adjudged them eligible for extended life sentences without the possibility of parole.

### 1.    The anonymous jury violated the defendants' presumption of innocence.

Here, the circuit court decided that juror anonymity was necessary to prevent prospective jurors from saying they were "afraid to serve."  Yet there was no evidence in the record to support this presumption.  There was simply no basis for the judge to assume that the prospective jurors had any reason to believe that their fellow members of the community, who were presumed innocent, posed any threat to the jury at all.  There was no inference or allegation that the defendants would attempt to harm, or tamper with, the jury.  Likewise, there was no inference or allegation that the defendants would attempt to

---

[4]     The jury found Lafoga guilty of attempted murder, use of firearm in a separate felony, kidnapping, and felon in possession of a firearm. Answering a special interrogatory, the jury found that the kidnapping count merged with the attempted murder count, and later the court dismissed the kidnapping charge.

The jury found Ines guilty of accomplice to attempted murder, kidnapping, and robbery in the first degree.  Answering a special interrogatory, the jury found that the kidnapping and robbery counts merged with the accomplice to attempted murder count, and later the court dismissed the kidnapping and robbery charges.

harm or interfere with any witnesses, or the judicial process. Further, there was no indication that jurors would be subjected to the type of extensive publicity that might bring about intimidation and harassment from the media, and/or the public. As such, the circuit court erroneously imposed juror anonymity in the instant case, and unjustifiably impaired the defendants' presumption of innocence in the process.

The Majority and the ICA concede that the circuit court had no basis to believe anonymity was required to protect the jury, and that an anonymous jury should not have been ordered. Specifically, the ICA held that the circuit court's belief that jurors would be "afraid to serve" was "insufficient to establish a 'strong reason to believe that the jury needs protection' to justify the modified jury procedure used in this case." (Emphasis added). The Majority agreed, referring to the circuit court's belief as a mere "hunch" for which there was "no strong, evidence-rooted reason[.]" (Emphasis added). The Majority further expressed concern that "[t]he court should've handled this jury selection like any trial[.]" Nonetheless, the Majority concluded the action of the circuit court was of no consequence. Respectfully, the *sua sponte* action of the circuit court violated the defendants' constitutional right to be presumed innocent by imposing, without justification, an

anonymous jury that inferred the defendants' dangerousness and guilt.

The presumption of innocence is "the undoubted law, axiomatic and elementary[.]"  Coffin v. United States, 156 U.S. 432, 453 (1895).  The presumption of innocence is "vital and fundamental[.]"  Id. at 460.  It is "a basic component of a fair trial under our system of criminal justice."  Estelle v. Williams, 425 U.S. 501, 503 (1976).  As such, "its enforcement lies at the foundation of the administration of our criminal law."  Coffin, 156 U.S. at 453.

Protecting the presumption of innocence was a signature issue in State v. Samonte, 83 Hawai'i 507, 928 P.2d 1 (1996), where the trial court empaneled a partially anonymous jury in response to demonstrated jury tampering.  Even under such circumstances, the Samonte court recognized that an anonymous jury jeopardizes a defendant's "constitutional right to a presumption of innocence" by inferring the defendant is guilty or dangerous.  Samonte, 83 Hawai'i at 519, 928 P.2d at 12–13 ("[a]n anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence.") (citation omitted and emphasis added).  In order to protect the presumption of innocence, the Samonte court applied a now-settled two-part test (the

11

"anonymous jury test") to determine the degree to which the presumption of innocence can be impaired by the empaneling of an anonymous jury. See id. at 520, 928 P.2d at 14. The anonymous jury test prohibits the withholding of jurors' names from a defendant without: (1) a "strong reason to believe that the jury needs protection" and (2) "taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." Id.

In contrast to Samonte, where jury tampering supplied the "strong reason" to justify juror anonymity, the circuit court here had no justification at all to believe anonymity was required to protect the jury. Thus, the circuit court withheld the jurors' names from the defendants' without demonstrating any threat to juror safety. It is therefore indisputable that the circuit court failed to satisfy the first prong of the anonymous jury test. Because there was no strong reason to withhold juror names from the defendants, the defendants' "right to be tried before a panel of identified jurors was not required to be sacrificed in this case." Sanchez, 74 F.3d at 565.

Failing the first prong of the Samonte anonymous jury test constitutes structural error and is not subject to harmless error review. See id. (empaneling an anonymous jury without evidence it was warranted was not subject to harmless error review). Without any strong reason for doing so, the trial

12

court cannot *sua sponte* reengineer the structural framework of a fair trial, and sweep away constitutional protections specifically devised to protect the right to a fair trial. See Flores, 62 N.Y.S.3d at 74, 76 (harmless error did not apply where the anonymous jury was empaneled without "good cause[.]"). Where the extreme prejudice to the defense caused by the imposition of an anonymous jury is not justified pursuant to the first factor of the anonymous jury test, consideration of the second factor is precluded. See Sanchez, 74 F.3d at 565 (empaneling an anonymous jury without justification was not subject to harmless error review; no further analysis as to whether the district court took reasonable precaution to mitigate any prejudice to the defendant was required to vacate the conviction and reverse).

Because the Majority found no justification for the circuit court's empaneling of an anonymous jury, harmless error does not apply, and the Majority should not have proceeded to second prong of the anonymous jury test to consider whether the circuit court's error could be deemed harmless. See id. Therefore, the following analysis is provided only to further demonstrate that imposition of the anonymous jury fails the second prong of the anonymous jury test as well.

Here, the circuit court imposed an anonymous jury without legal justification, and thereafter took no action to

mitigate against a juror's inference that juror anonymity was to protect them from "threats from the criminal defendant[.]" Samonte, 83 Hawai'i at 522, 928 P.2d at 16. Because "[a]n anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected," id. at 519, 928 P.2d at 12, a "plausible and nonprejudicial reason" for why the jurors are to be anonymous must be explained to jurors. This is to mitigate the impact of the anonymous jury on the defendant's presumption of innocence. Id. at 516, 928 P.2d at 22. As set forth above, defense counsel specifically requested that the circuit court provide the jurors with a reason as to why they were anonymous, and let the jurors know "it's not meant to be offensive." The circuit court explicitly refused to do so, stating "I don't want to give them the [c]ourt's rationale as to why we're not referring to their names in court." The record further reflects that the circuit court failed to supply the jury with any reason for why the jurors were to be anonymous, let alone a "plausible and nonprejudicial reason." Id. The judge's refusal to supply the jurors with any explanation for their anonymity illustrates that the circuit court failed to "decrease[] the probability that the jurors would infer that the defendant is guilty or dangerous[.]" Id. at 522, 928 P.2d at 16. As such, the circuit court clearly failed the second prong of the Samonte test, which requires the

trial court to "take reasonable precautions to minimize any prejudicial effects on the defendant, and to ensure that his fundamental rights were protected." Id. at 520, 928 P.2d at 14.

The Majority holds that the circuit court took the reasonable precaution of providing jurors with a "plausible and non-prejudicial reason" for their anonymity, and that the circuit court's error in withholding jurors' names without "strong reason" was therefore harmless. To support its holding, the Majority acknowledges that Samonte instructs trial courts to provide anonymous jurors with the highly specific "plausible and non-prejudicial reason" that the jurors' anonymity is to "protect the jurors from contacts by the news media, thereby implying that juror anonymity is not the result of threats from the criminal defendant[.]" Id. at 522, 928 P.2d at 16 (emphasis added). The Majority thereafter concludes, without analysis or explanation, that "[h]ere, the trial court used Samonte's media-centered alternative reason to explain the confidential jury method[.]" The record does not support the Majority's assertion.

The record is devoid of any language that purports to explain to the jury that they are anonymous for purposes of protecting them from being contacted by the media. The Majority appears to argue that the following circuit court instructions to the seated jury supplied the prospective jurors with

15

"Samonte's media-centered alternative reason" as to why they were to remain anonymous:

> Ladies and gentlemen, also, as we continue through this trial, you are going to be referred to by your juror number as well as your chair number. Your names are not made part of the public record of this case. You already see that there is a camera here in the courtroom. While they are permitted to cover the proceedings, the press is not allowed to have any likeness of yours, so they can't take any pictures of you, they cannot take any video of you, they cannot depict the jury in this case. So in addition to your names, your likeness will not be made part of the public record or available to the public in any way in this case.

(Emphasis added).

As the plain language makes clear, there is no basis to infer from this statement that the circuit court explained to the jury their anonymity was required to "protect the jurors from being contacted by the news media." The court's statement to the seated jury merely mentions the camera's presence in the courtroom, and sets forth the camera's prohibitions against capturing any juror likeliness. There is no language with respect to any concerns that the media may attempt to contact the jurors. There is no rationale supplied in this statement as to why juror anonymity is required. Without a plausible and nonprejudicial reason for juror anonymity, the jury is left with the unmitigated inference of the defendants' dangerousness and guilt.

To be clear, none of the language in the circuit court's statement infers the jury needs protection from the

16

media.  There is no language with respect to protecting the jurors' phones from ringing, or their doors from being knocked on, or jurors being approached and/or contacted in any way by anyone, let alone the media.  As such, this statement does not supply the Samonte-required explanation to the jury that the reason for their anonymity is "to protect the jurors from contacts by the news media, thereby implying that juror anonymity is not the result of threats from the criminal defendant."  Samonte at 522, 928 P.2d at 16.

Therefore, the circuit court did not "use[] Samonte's media-centered alternative reason to explain" anonymity to the jurors.  The Majority points to no other support for inferring that the circuit court took reasonable precautions to mitigate the prejudice of an anonymous jury in the instant case.  The record demonstrates that the circuit court plainly failed to provide any plausible alternative explanation to the jury as to why their names were being withheld.  Because the trial court did nothing to mitigate against a juror's inference that juror anonymity is to protect them from "threats from the criminal defendant[,]" the trial court clearly failed the second prong of the Samonte anonymous jury test as well.  Samonte at 522, 928 P.2d at 16.

Depriving a defendant of the presumption of innocence without "strong reason" and without taking "reasonable

17

precautions" to "minimize any prejudicial effects on the defendant" constitutes structural error. See Flores, 62 N.Y.S.3d at 74, 76-77 (the empaneling of an anonymous jury without cause and without reasonable precaution was not subject to harmless error analysis). Under both prongs of the anonymous jury test articulated in Samonte, the circuit court's decision to empanel an anonymous jury cannot be upheld.

### 2. The anonymous jury violated the defendants' right to an impartial jury.

The circuit court's insistence on juror anonymity without cause also violated the defendants' right to an impartial jury. As set forth above, defense counsel objected to the anonymous jury, arguing that jurors' names were essential to ensuring an impartial jury could be empaneled: "[W]e need to know who [jurors] are for our research purposes and preparing voir dire. . . .[I]s there a conflict of interest or potential conflict of interest?  Do I know the juror[?] [T]hat's what I'm mainly concerned about."  (cleaned up and emphasis added). Notwithstanding the clear articulation of need by defense counsel, the circuit court was unbending in its insistence that defendants would be precluded from learning the identity of the jurors.  Thus, the circuit court declined defense counsel's well-articulated request to supply the defendants with the jurors' names in order to procure an unbiased jury.  By denying

the defendants the names of the jurors, the circuit court severely restricted the defendants' ability to assist counsel with voir dire, and vet prospective jurors for potential prejudice. By removing an essential tool of the defense to obtain a fair jury, the court violated the defendants' constitutional right to an impartial jury.

"As with the presumption of innocence, the right of trial by an impartial jury is guaranteed to a criminal defendant by the state constitution (Art. I, Sec. 11)[5] and by the Sixth Amendment of the federal constitution as applicable to the States through the Fourteenth Amendment, as well by principles of due process under both the state and federal constitutions." State v. Pokini, 55 Haw. 640, 526 P.2d 94 (1974). Protecting the right to an impartial jury was another signature concern of this court in Samonte. Specifically, the Samonte court warned that juror anonymity impairs a defendant's rights to an impartial jury by adversely affecting voir dire: "a criminal defendant has a constitutional right to an impartial jury. We are ... mindful of the fact that juror anonymity denies a defendant information that might be helpful in the exercise of his or her right to utilize peremptory challenges during voir

_____

[5]    These rights now reside in article I, section 14 of the Hawai'i Constitution.

dire." Samonte, 83 Hawaiʻi at 519, 928 P.2d at 13 (internal quotations and citations omitted and emphases added).

Because the circuit court here withheld the jurors' names from the defendants, the defendants were denied the "constitutional guarantee . . . of an impartial jury." Id. By contrast, even in Samonte, where anonymity was deemed justified due to jury tampering, the defendant was not deprived of the learning the identities of the jurors. "The parties [including the defendant] knew the last names of the jurors." Id. Thus, the defense "was able to exercise peremptory challenges and conduct a thorough voir dire because the jury was not completely anonymous." Id. at 522, 928 P.2d at 16. Because the defendant "knew the last names of the jurors[,]" Samonte's voir dire was not unduly restricted. The same cannot be said for the defendants in the instant case.

Voir dire is the structural process through which the constitutional right of trial by an impartial jury is given effect. To protect the integrity of the voir dire process, the legislature provides defendants in Hawaiʻi with the statutory right "to examine a proposed juror as to the proposed juror's qualifications, interest, or bias that would affect the trial[.]" Hawaiʻi Revised Statutes ("HRS") § 635-27 (emphasis added). A prospective juror's name is essential for examining a prospective jurors' "qualifications, interest, or bias." Id.

20

As such, the name of a prospective juror is likely to be the most important piece of information the accused can apply in voir dire to empanel an impartial jury.  In recognition of the fundamental importance of juror identity to the attainment of a fair trial, the legislature acted to compel the disclosure of prospective jurors' names to defendants in a criminal trial.  Pursuant to HRS § 612-18(c), "the names of prospective jurors to be summoned to sit as a jury, and the contents of juror qualification forms completed by those jurors, shall be made available to the litigants concerned."  (Emphases added).  It is beyond question that this statutory mandate compelling disclosure of juror names to defendants at trial protects substantive rights:  this court in Samonte specifically emphasized that "the purpose of HRS § 612-18(c) is to uphold a criminal defendant's constitutional guarantees of a presumption of innocence and an impartial jury[.]"  Samonte, 83 Hawai'i at 519, 928 P.2d at 13 (emphasis added).  The import of HRS § 612-18(c) with respect to empaneling an impartial jury is clear: making the names of prospective jurors available to the accused is essential to ensuring the defense is able to sufficiently probe the prospective jurors for potential prejudice.

The defendants in the instant case were thus denied the ability to sufficiently discern bias in the jury pool.  The defendants were placed at a greater disadvantage than the

21

defendant in Samonte, where it was determined that jury tampering justified juror anonymity. Because Samonte was supplied the last names of the prospective jurors, the Samonte court held that "the trial court took reasonable precautions to minimize any prejudicial effects on Samonte and to ensure that his fundamental rights were protected." Id. at 523, 928 P.2d at 17. Conversely, there was no justification in the instant case to empanel an anonymous jury. Nor were there any "reasonable precautions" taken by the circuit court to "minimize any prejudicial effects on the defendant[s]" to "ensure that [their] fundamental rights [were] protected[.]" Id. at 521, 928 P.2d at 15.

Here, the circuit court completely withheld every part of the jurors' names from the defendants without legal justification. As noted, compounding the error, the circuit court then did nothing to mitigate a juror's inference that juror anonymity is to protect them from "threats from the criminal defendant." Id. at 522, 928 P.2d at 16.

As with the presumption of innocence, depriving the defendants of their right to an impartial jury without "strong reason" and without taking "reasonable precautions" to "minimize any prejudicial effects on the defendant" further constitutes structural error. See Flores, 62 N.Y.S.3d at 74, 76-77 (the empaneling of an anonymous jury without cause and without

22

reasonable precaution was not subject to harmless error analysis).  Under the anonymous jury test articulated in Samonte, the circuit court's decision to empanel an anonymous jury stripped defendants of rights fundamental to their receiving a fair trial.

**B.      The trial court committed structural error by denying defendants' effective assistance of counsel and unduly restricting voir dire.**

The same facts that constituted a deprivation of the defendants' rights to an impartial jury constituted a deprivation of the right to counsel by (1) impermissibly interfering with defense counsel's ability to conduct and control the defense strategy, (2) unduly restricting voir dire, and (3) preventing the defendants from "participat[ing] fully and fairly in the adversary factfinding process."  Herring v. New York, 422 U.S. 853, 858 (1975).

The right to effective assistance of counsel includes the right to conduct and control defense strategy.  Strickland v. Washington, 466 U.S. 668, 686 (1984) ("Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense.") (emphases added).  Court restrictions on representation constitute impermissible interference with defense counsel.  Herring, 422 U.S. at 857 ("[T]he right to the assistance of counsel has been understood

23

to mean that <u>there can be no restrictions upon the function of counsel</u> in defending a criminal prosecution[.]") (emphasis added).  Preventing a defendant from participating fully and fairly in their defense also violates the right to effective assistance of counsel.  <u>Id.</u> at 858 ("<u>The right to the assistance of counsel has thus been given a meaning that ensures to the defense in a criminal trial the opportunity to participate fully and fairly in the adversary factfinding process.</u>") (emphasis added).  Hawai‘i courts have recognized that "[t]he sixth amendment and article I, section 14 of the Hawai‘i Constitution guarantee an accused the right to the assistance of counsel in his or her defense, ... as well as the right to present a defense."  <u>State v. Vliet</u>, 91 Hawai‘i 288, 294, n. 3, 983 P.2d 189, 195, n. 3 (1999) (internal citations omitted).  "[T]he defendant has a constitutional right under the sixth amendment to offer a defense, and, as an adjunct to this right, <u>to devise a proper and appropriate trial strategy</u> to blunt or otherwise neutralize the thrust of the prosecution's case-in-chief."  <u>State v. Kupau</u>, 10 Haw. App. 503, 516, 879 P.2d 559, 565 (1994), <u>aff'd and remanded,</u> 76 Hawai‘i 387, 879 P.2d 492 (1994).

Here, the court's anonymous jury restricted the function of defense counsel, and prevented the defendants from "participat[ing] fully and fairly" in their defense.  <u>Herring</u>, 422 U.S. at 858.  By requiring defense counsel to keep the names

24

of prospective jurors secret from their clients, the court interposed a firewall between counsel and their clients that (1) precluded their ability to communicate to each other about trial strategy and controlling their defense, and (2) destroyed their ability to effectively engage in voir dire.

This court has recognized that "the erroneous deprivation of the right to counsel under article I, section 14 of the Hawai'i Constitution is a structural error not subject to harmless error analysis[.]" Akau v. State, 144 Hawai'i 159, 162, 439 P.3d 111, 114 (2019). As such, "no showing of prejudice is required[.]" Id. The unjustified withholding of jurors' names effected a court-imposed restriction on voir dire that precluded the defendants from "participat[ing] fully and fairly" in the jury selection process. Herring, 422 U.S. at 858. Because the jurors' names were withheld from the defendants, they were rendered unable to assist counsel in the development of defense strategy by conducting voir dire with information critical to the selection of twelve fair judges of the facts. Because the defendants did not know who the prospective jurors were, defendants could not "participate fully and fairly" in the defense strategy aimed at discovering whether a prospective juror may be prejudiced on the basis of knowledge of, or relationships with, the defendants themselves, and/or potential witnesses. Id. The defendants were thus deprived of the

effective assistance of counsel, and harmless error does not apply. Akau, 144 Hawai'i at 162, 439 P.3d at 114. Id. Additionally, because the jurors were kept anonymous from the defendants, it cannot be known whether the jurors were prejudiced against the defendants due to a negative interaction with a potential juror in the past. This court has considered that "an error may be properly considered structural when the impact of the error on conviction is impossible to reliably assess and when harmless error review would require the appellate court to engage in pure speculation." State v. Loher, 140 Hawai'i 205, 222, 398 P.3d 794, 811 (2017). Because there is no way of "reliably assessing" the impact of the circuit court's error in the instant case, harmless error review would require the court to "engage in pure speculation" about whether any of the prospective jurors harbored such undetected bias towards the defendants. Id. Accordingly, harmless error analysis does not apply.

The withholding of the jurors' names from the defendants also constituted an impermissible interference with defense counsel's ability to control the defense. Strickland v. Washington, 466 U.S. at 686 ("Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense."). Because the circuit court withheld the

jurors' names from the defendants, the defense attorneys could not seek and obtain key information from defendants about prospective jurors that would shape and inform trial strategy; this was a "restriction[n] on the function of counsel" and trial strategy was thus impaired. Herring, 422 U.S. at 857. Because defense counsel lost the ability to consult with their clients about discerning potential prejudice in the jury pool, counsel was no longer able to "make independent decisions about how to conduct the defense." Strickland v. Washington, 466 U.S. at 686.

The deprivation of the defendants' right to counsel again constitutes structural error "not subject to harmless error analysis[.]" Akau, 144 Hawai'i at 162, 439 P.3d at 114. As such, "no showing of prejudice is required[.]" Id.

C. **The trial court committed structural error by denying the defendants an impartial tribunal.**

The circuit court judge explained that he empaneled an anonymous jury in the instant case because he presumed a juror would say "I'm afraid to serve." The judge elaborated that he did not want to give the jurors his rationale for keeping them anonymous because he believed that if he did, he would have to "quell anxiety" amongst the jurors and assure them "that there's been no incidents" in the past by stating: "I have, in the past, had to inform jurors to quell anxiety, that there's been no

incidents whatsoever. <u>I do believe that's the situation here</u>, but <u>I don't want it to be raised in the entire panel's consciousness at all because we want them to serve</u>." (Emphases added). The judge thus "believe[d]" that the "situation here" would give jurors "anxiety" that would lead them to say "I'm afraid to serve." As conceded by the Majority, it is indisputable that the judge had no "evidence-rooted reason" to harbor such beliefs, and consequently empanel an anonymous jury. The circuit court's "hunch" that some jurors might say they are "afraid to serve" does not support an anonymous jury. However, the court's "hunch" does imply that the judge himself believed the jurors had reason to be afraid to serve. This belief implies a lack of neutrality on the part of the judge, because it implies the judge passed judgment on the facts of the case, as well as on the character of the defendants. The judge concluded that the defendants were not to be trusted with the names of the potential jurors. The complete absence of any evidence suggesting the defendants could not be trusted evinces a belief by the judge that, merely based on the accusations against them, defendants were not to be trusted with the names of the jurors. As noted by the Majority, "[f]or a fully anonymous, partially anonymous, or confidential jury, a trial court <u>must</u> detail a "strong reason" the jury or jury system needs protection <u>and make clear, evidence-based findings to</u>

support the conclusion." (Emphasis added). The Majority concurs the circuit court judge lacked any such evidence-based findings in the instant case. Therefore, without evidence to support the judge's belief that the jury was facing a threat, or had reason to be afraid, the inference that the judge "assumed the role of a prosecutor" and presumed the defendants guilty pervades. State v. Silva, 78 Hawai'i 115, 120, 890 P.2d 702, 707 (App. 1995), overruled on other grounds by Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995). This inference "seriously compromise[s] the fundamental tenet of judicial impartiality which must underlie criminal trials[.]" Silva, 78 Hawai'i at 121, 890 P.2d at 708. Because "the violation of the Hawai'i constitutional right to an impartial judge is so basic to a fair trial that it can never be treated as harmless error[,]" the judge's empaneling of an anonymous jury constituted structural error and remand for a fair trial is required. Id.

### III. CONCLUSION

There is no dispute that the circuit court erred in empaneling a jury whose identity was disguised behind a number. The Majority's holding portends a future where it is deemed harmless for judges to act upon no record to deny defendants the fundamental right to a fair trial judged by a known jury. I depart from such a profound weakening of the right to a fair

29

trial.  Respectfully, withholding the names of the twelve jurors from the defendants without any basis violated Lafoga's and Ines' constitutional rights to the presumption of innocence, right to counsel, right to an impartial jury, and right to an impartial judge of the law.  In so doing the circuit court committed structural error tearing the fundamental fabric of a fair trial.  Error of such consequence is not subject to harmless review.  The ICA's June 20, 2022 judgment on appeal, the circuit court's February 20, 2020 judgment of conviction and sentence for Lafoga,[6] and the circuit court's September 2, 2020 amended judgment of conviction and sentence for Ines should be vacated with instructions on remand to allow defendants to conduct voir dire without restriction.  Accordingly, I respectfully dissent.[7]

/s/ Michael D. Wilson

---

[6]    Mr. Brandon Lafoga stands forever deprived of a fair trial in the instant case, as he died in custody on February 5, 2023.

[7]    I concur with the Majority's opinion that the extended term sentencing instructions and special interrogatories were prejudicially erroneous and misleading, and that remand for a new extended term sentencing hearing and resentencing is required.