**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 94-6086**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**Belarmino SANCHEZ,**

**Defendant-Appellant.**

**Appeal from the United States District Court**
**for the Southern District of Texas**
_____

January 23, 1996

Before WISDOM, GARWOOD, and JONES Circuit Judges:

EDITH H. JONES, Circuit Judge

Defendant Belarmino Sanchez ("Sanchez") appeals his conviction on five counts of misdemeanor civil rights violations under 18 U.S.C. § 242 ("§ 242") and one count of felonious civil rights violation under the same statute. Because the district court abused its discretion when it empaneled an anonymous jury to adjudicate Sanchez's guilt, this court reverses and remands for a new trial.

## I.  FACTUAL BACKGROUND

Sanchez was a Galveston Police Officer assigned to patrol an area of that city frequented by prostitutes and bustling with illicit drug activity. While patrolling this area between September and November of 1992, Sanchez allegedly used the threat

of arrest to coerce five suspected prostitutes to engage in various sexual acts with him against their will.

Following trial in which the district court empaneled an anonymous jury, Sanchez was convicted and sentenced to serve 180 months of imprisonment.[1]    On appeal, Sanchez contends that: (a) the district court erred in empaneling an anonymous jury; (b) the evidence of "significant injury" was insufficient to support Sanchez's conviction for a felonious civil rights violation; and (c) the district court erred in excluding testimony that purportedly corroborated Sanchez's defense that he was the victim of a conspiracy by the suspected prostitutes against him and the Galveston Police Department.[2]

## II. DISCUSSION

### A. Anonymous Jury

Until recently, this court had not addressed the constitutionality of empaneling anonymous juries in criminal trials.  However, in *United States v. Krout,* 66 F.3d 1420, 1427 (5th Cir. 1995) we recognized that "the decision to empanel an anonymous jury . . . is a drastic measure, which should be undertaken only in limited and carefully delineated circumstances." Accordingly, this court approved the use of anonymous juries only "when needed to ensure against a serious threat to juror safety, if

---

[1]    Specifically, Sanchez was sentenced to prison for 120 months on the felony count and 12 months on each of the five misdemeanor counts, to be served consecutively.

[2]    Because of our disposition of the case on the jury issue, this court need not reach the merits of Sanchez's additional argument that the district court erred in refusing certain of his peremptory challenges.

the courts also protect the defendants' interest in conducting effective voir dire and maintaining the presumption of innocence." *Id.* *Krout's* narrowly conscribed approval of anonymous juries concurs with the reasoning of other federal circuits that have addressed this issue. *See, e.g., United States v. Paccione,* 949 F.2d 1183 (2d Cir.), *cert. denied,* ___ U.S. ___, 112 S. Ct. 3029 (1992); *United States v. Scarfo,* 850 F.2d 1015, 1023-26 (3d Cir.), *cert. denied,* 488 U.S. 910, 109 S. Ct. 263 (1988); *United States v. Crockett,* 979 F.2d 1204 (7th Cir. 1992), *cert. denied,* ___ U.S. ___, 113 S. Ct. 1617 (1993); *United States v. Ross,* 33 F.3d 1507 (11th Cir. 1994); *United States v. Edmond,* 52 F.3d 1080 (D.C. Cir. 1995).

A district court's decision to empanel an anonymous jury is entitled to deference and is scrutinized by this court for abuse of discretion. *Krout,* 66 F.3d at 1426; *United States v. Thornton,* 1 F.3d 149, 154 (3d Cir.), *cert. denied,* ___ U.S. ___, 114 S. Ct. 483 (1993). Factors that may justify the district court's decision to protect jurors through anonymity include:

> (1) the defendants' involvement in organized crime; (2) the defendants' participation in a group with the capacity to harm jurors; (3) the defendants' past attempts to interfere with the judicial process or witnesses; (4) the potential that, if convicted, the defendants will suffer a lengthy incarceration and substantial monetary penalties; and, (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment.

*Krout,* 66 F.3d at 1427. Additionally, so that "the use of anonymous juries will remain a device of last resort, it is

**3**

necessary that the district court base its decision on more than mere allegations or inferences of potential risk." *Id.* As a result, a district court does not abuse its discretion to empanel an anonymous jury if the "evidence at trial supports the conclusion that anonymity was warranted." *Id.* (*citing United States v. Wong,* 40 F.3d 1347, 1376-77 (2d Cir. 1994)).

In the instant case, jury selection occurred on June 3, 1994, but because the trial judge was required to attend a judicial conference the following week, the evidentiary phase of trial was not scheduled to commence until June 13. Planning for this delay, the magistrate judge issued an order on May 20 that redacted all identifying information about prospective jurors from the jury selection information provided to the parties. The express purpose of this order was "[t]o minimize the possibility of jury tampering in this cause during the ten day delay between jury selection and commencement of the evidentiary phase of the trial."

The district court overruled the defendant's objections to this order and confirmed that the names of the jurors and their spouses, their addresses and places of employment be deleted from the jury lists. Simultaneously, however, the district court acknowledged that there were neither allegations nor inferences of tampering. Nevertheless, the district court concluded that redacting the jurors' identities was necessary because of the delay following jury selection as well as the potential fears of jurors adjudicating the guilt or innocence of a police officer. These potential fears were based on the district judge's speculation that

"I don't think there's anything more frightening to the populous [sic] [than] having a rogue cop on their hands."

Under the framework enunciated in *Krout,* the court's decision cannot be upheld. Virtually none of the factors listed in *Krout* as justifying an anonymous jury exists in the present case. No one could demonstrate or even allege that Sanchez was either involved in organized crime or participated in a group that would attempt to harm the jurors. Likewise, despite the courts' concern about jurors' fears of deciding a case about an alleged renegade policeman, there was no evidence that Sanchez had attempted to interfere with the judicial process or witnesses. Finally, there was no indication that the jurors in this case would be subjected to the type of extensive publicity that might bring about intimidation and harassment. Because there was no evidence before the district court to support the conclusion that anonymity was warranted, the district court's decision erroneously rested on the "mere allegations or inferences of potential risk." *Krout,* 66 F.3d at 1427. We must conclude that Sanchez's right to be tried before a panel of identified jurors was not required to be sacrificed in this case.

The government argues that even if the *Krout* criteria were lacking, it was harmless error to try the case before an anonymous jury because the court conducted extensive voir dire and enabled Sanchez to pick an unbiased jury, albeit Sanchez did not know the jurors' names and addresses or their spouses' or employers' names. We disagree. The defendant has a right to a

jury of known individuals not just because information such as was redacted here yields valuable clues for purposes of jury selection, but also because the verdict is both personalized and personified when rendered by 12 known fellow citizens. Unless the type of circumstances listed in *Krout* exist, where the defendant has essentially compromised his right, he should receive a verdict, not from anonymous decisionmakers, but from people he can name as responsible for their actions. In closer cases on the merits of requiring anonymity, there might be room for a harmless error analysis, but this is not such a case. The conviction must be reversed and remanded for retrial.

### B. "Significant Injury"

Sanchez cannot escape retrial on the ground that there was insufficient evidence to sustain his conviction for the felonious civil rights violation of one of his victims, Paula Ruiz ("Ruiz"). Specifically, Sanchez argues that the government failed to prove that Ruiz suffered a significant injury during Sanchez's attack. While Sanchez recognizes that after *Harper v. Harris Co.,* 21 F.3d 597, 600 (5th Cir. 1994), this court no longer requires significant injury for a victim to complain of excessive force under the Fourth Amendment, he nevertheless urges that *Harper* was not clearly established, controlling law in 1992, when the attack on Ruiz occurred.[3] Rather, Sanchez argues that *Harper's*

---

[3] In part, *Harper* was prompted by the Supreme Court's holding in *Hudson v. McMillian,* 503 U.S. 1, 112 S. Ct. 995 (1992), that rejected significant injury as a requirement for claims of cruel and unusual punishment under the Eighth Amendment.

predecessor, *Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir. 1989) (*en banc*) was the controlling law in this circuit and that *Johnson* required a showing of significant injury for a victim to seek Fourth Amendment relief for excessive force.

Sanchez did not argue in the trial court, as he does here, that significant injury was an element of a criminal civil rights violation based on excessive force. He did not object to the jury charge for failing to require a finding of significant injury; the charge required only a finding of bodily injury. Thus, to the extent Sanchez's present position is a jury charge argument cloaked as a sufficiency argument we may review it only for plain error. Under the stringent *Olano* test, we find none.[4]

Even if Sanchez is correct and *Johnson* was the controlling law when the attack on Ruiz occurred,[5] the evidence at trial was sufficient to demonstrate significant injury and to sustain a felony conviction under Count 5. Ruiz testified that Sanchez, who had on an earlier occasion coerced her into performing oral sex, not only threatened to kill her, but also slammed her against his car, struck her on the head with his gun, and, when she fell, pulled her up by the hair and choked her. The assault left Ruiz with torn clothing, a knot on her head, and scratches on her body. Her roommate, Rebecca McAdams ("McAdams") testified that

---

[4] *United States v. Olano,* ___ U.S. ___, 113 S. Ct. 1770, 1776-79 (1993).

[5] Since Ruiz did suffer significant injury, this court need not address whether such injury was required as part of a violation of the Fourth Amendment right to be free from excessive force in October or November, 1992.

**7**

when Ruiz returned to their home after the attack, "[s]he was very hysterical. She was crying and screaming and her clothes were torn. She was very upset and hurting. She was hurting real bad." According to McAdams, Ruiz repeatedly complained about pain in her stomach and abdomen. Although McAdams offered to take Ruiz to the hospital, Ruiz refused, fearful that Sanchez would retaliate if she discussed the assault with hospital personnel.

As this testimony demonstrates, Sanchez's attack on Ruiz satisfies *Johnson's* requirement of significant injury. In *Johnson,* the victim was handcuffed by police so tightly as to scar his wrists and cause him pain for two weeks. *Johnson,* 876 F.2d at 478. By contrast, Ruiz was threatened by Sanchez with death, slammed against his car, struck on the head with his gun, pulled from the floor by her hair, and choked, leaving her with a knot on her head, scratches, bruises, and abdominal as well as stomach pain. Furthermore, in *Johnson,* the victim was under arrest when he was allegedly subjected to excessive force by the police, while in the present case, Ruiz was never under arrest; in different terms, the assault on Ruiz was an assault on a citizen over whom the police had no probable cause even to exert reasonable force.[6] Even if Sanchez had enjoyed such authority, Ruiz is a 23-year-old woman who was neither belligerent nor any physical threat to him; hence,

---

[6] The conclusion that Ruiz's injury was significant accords with other decisions of this court. For example, in *Hay v. City of Irving, Tex.,* 893 F.2d 796 (5th Cir. 1990), this court held that an arrestee who was physically resisting the police demonstrated significant injury when the officer's assault, although leaving the arrestee with bruises and extensive pain, did not require him to be "hospitalized, and the doctor prescribed nothing stronger than Tylenol." *Hay,* 893 F.2d at 798. *See also Oliver v. Collins*, 914 F.2d 56, 58 (5th Cir. 1990).

8

Sanchez's use of such violent force was obviously excessive. The evidence at trial was sufficient to conclude that because Ruiz was not under arrest and posed no threat to Sanchez, his use of violent force was excessive and violated her civil rights.

### C.     Conspiracy Theory

Finally, Sanchez contends that the district court erred when it excluded the testimony of Jorge Trevino ("Trevino"), a fellow Galveston police officer, who was to testify that at some time after Sanchez had been indicted, Trevino was approached by a local prostitute and was warned, "You're next." From this statement, Sanchez apparently inferred that he was a victim of a conspiracy organized by local prostitutes to remove law enforcement officers from the streets. As a result, Sanchez argues that the district court's exclusion of the testimony deprived him of the right to present a witness in his defense, implicating his Sixth Amendment rights and other due process concerns.

Finding no basis for Sanchez's inference, the district court ruled that the testimony was inadmissible under Fed. R. Evid. 403 because "the prejudicial implication of an uncorroborated allegation manifestly outweighs the probative value." Indeed, the court found that such an unsupported allegation "would tax the bounds of paranoia to suggest that all the women in Galveston have banded together to do violence to the police department." The court further concluded that the testimony was inadmissible under either Fed. R. Evid. 405(b) or 404(a) because it constituted "merely a random uncorroborated act that seeks to exonerate."

This court reviews for abuse of discretion the district court's decision to exclude unduly prejudicial evidence. *United States v. Rocha,* 916 F.2d 219, 241 (5th Cir. 1990), *cert. denied,* 500 U.S. 934, 111 S. Ct. 2057 (1991) (requiring a "clear showing of prejudicial abuse of discretion"); *United States v. Blake,* 941 F.2d 334, 340 (5th Cir. 1991), *cert. denied,* ___ U.S. ___, 113 S. Ct. 596 (1992). In this case, there was no evidence before the district court that any of Sanchez's victims had conspired to conjure charges against him. The excluded statement was allegedly made by a prostitute who, apart from her illicit vocation, had no discernible association with any of the victims. Although Sanchez contends that the statement was somehow exculpatory, there was substantial and corroborated evidence of his guilt. Hence, the district court's decision to exclude uncorroborated, speculative testimony of a mysterious conspiracy to frame Sanchez was not an abuse of its discretion.

## CONCLUSION

Because the district court abused its discretion when it empaneled an anonymous jury to adjudicate Sanchez's guilt, this court **REVERSES** his convictions and **REMANDS** for a new trial.

10