# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

QUINCY MARTINEZ HUSBAND,

      Defendant-Appellant.

UNPUBLISHED
December 14, 2017

No. 333432
Wayne Circuit Court
LC No. 15-008648-01-FC

Before: GLEICHER, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a), assault by strangulation, MCL 750.84(1)(b), felonious assault, MCL 750.82, and aggravated domestic assault, MCL 750.81a(2). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 25 to 40 years' imprisonment for his AWIGBH conviction, 6 to 10 years' imprisonment for his assault by strangulation conviction, two to four years' imprisonment for his felonious assault conviction, and six months to one year for his aggravated domestic violence conviction. We affirm.

## I. BASIC FACTS

This case arises out of defendant's assault of Sierra Lyles, which took place at her home in Detroit, Michigan on April 27, 2015. Before the assault, the victim and defendant were in a dating relationship. According to the victim, she was at home with her four-year-old son when defendant arrived and discussed repairing their relationship and getting married. The victim testified that she told defendant that she did not want to marry him, and in response defendant picked her up by her neck, "slammed [her] in the kitchen," and then got on top of her while repeatedly punching her in the face. The victim testified, "He choked me until I went to sleep." Once the victim regained consciousness, the assault continued. The victim stated that, at that point, she hit defendant in the face with a metal foot air pump, but that did not stop him. In retaliation, defendant hit the victim with a bar stool. At some point, the victim lost consciousness again, but was eventually awakened by her child. As the victim woke up, she noticed that defendant was in her bathroom washing blood off of his hands.

The victim testified that once defendant left the home, she walked down the street to her cousin's home and was then taken to the hospital. The victim was admitted to the hospital for a week and her injuries included broken bones in her face, a broken rib, and a broken jaw, which

required physicians to wire her mouth shut for a time. Defendant was arrested several weeks after the incident and was subsequently convicted by a jury of the earlier noted crimes.

## II. ANONYMOUS JURY

On appeal, defendant first contends that the trial court violated his due process rights by addressing the jurors by numbers instead of by their names. A defendant must "object to the trial court's referring to the jurors by numbers" to preserve the issue for appellate review. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). Defendant did not object to the trial court's use of numbers rather than names to refer to the jurors, so this issue is unpreserved. We review unpreserved issues, constitutional and nonconstitutional, for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To establish plain error requiring reversal, a defendant must demonstrate that "1) error . . . occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* at 763. To show that the error affected substantial rights, a defendant must prove "that the error affected the outcome of the lower court proceedings." *Id*. Reversal is warranted only if the error resulted in the conviction of an actually innocent defendant or if the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*.

In *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000), this Court explained that an anonymous jury is "one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." An anonymous jury implicates the following interests: "(1) the defendant's interest in being able to conduct a meaningful examination of the jury and (2) the defendant's interest in maintaining the presumption of innocence." *Id*. at 522-523. "A challenge to an 'anonymous jury' will only succeed where the record reflects that withholding information precluded meaningful voir dire or that the defendant's presumption of innocence was compromised." *Hanks*, 276 Mich App at 93, citing *Williams*, 241 Mich App at 523.

In *Hanks*, jurors were addressed by numbers rather than names, but the parties had access to completed juror questionnaires, which contained the jurors' biographical information, both parties conducted meaningful voir dire, and nothing in the record indicated that the use of numbers was unusual or undermined the defendant's presumption of innocence. *Hanks*, 276 Mich App at 94. The *Hanks* Court held that, under the circumstances, "none of the dangers of an 'anonymous jury' was implicated." *Id*. As in *Hanks*, the parties in this case had access to jury questionnaires before voir dire and each juror explicitly provided his or her full name and other personal details, such as occupation and marital status, during voir dire. Both parties conducted thorough voir dire, and nothing in the record suggests that the use of numbers rather than names was out of the ordinary or offended defendant's presumption of innocence. Therefore, defendant has not shown that the trial court plainly erred or that he was prejudiced by the court's use of numbers to refer to the jurors during trial. See *Carines*, 460 Mich at 763.

Defendant argues that two cases, *United States v Sanchez*, 74 F3d 562, 564 (CA 5, 1996), and *State v Tucker*, 259 Wis 2d 484, 501-502; 657 NW2d 374 (2003), support his position. However, in *Hanks*, this Court explained that reliance on these exact cases was misplaced under facts akin to those in this case. The *Hanks* Court explained as follows:

-2-

In reaching our conclusion, we find that defendant's reliance on two out-of-jurisdiction cases is misplaced. In *United States v Sanchez*, 74 F3d 562, 564 (CA 5, 1996), the United States Court of Appeals for the Fifth Circuit held that the trial court improperly withheld from the parties the jurors' names, the names of their spouses, the jurors' addresses, and the jurors' employers. But defendant fails to acknowledge a subsequent Fifth Circuit case that held that withholding jurors' names and addresses did not rise to the level of an anonymous jury. See *United States v Branch*, 91 F3d 699, 723 (CA 5, 1996). We are bound by *Williams*, which found *Branch* persuasive. *Williams*, [241 Mich App] at 523.

Defendant also cites *State v Tucker*, 259 Wis 2d 484, 501-502; 657 NW2d 374 (2003), which held that withholding jurors' names only implicates a potential "anonymous jury." Although judicial decisions of foreign jurisdictions may be persuasive, they are not binding. *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006). We are not persuaded that *Williams* was wrongly decided. [*Hanks*, 276 Mich App at 94-95 (footnote omitted).]

Considering the analysis in *Hanks*, defendant's reliance on these two out-of-jurisdiction cases is misplaced and the cases do not dictate a contrary result.

## III. GREAT WEIGHT OF THE EVIDENCE

Defendant next argues that the jury's verdict is against the great weight of the evidence because the victim's testimony that defendant strangled her is implausible considering the other evidence admitted at trial. A criminal defendant preserves the issue that his jury-trial conviction was against the great weight of the evidence by moving for a new trial in the lower court. *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). Defendant did not move for a new trial below, so this issue is unpreserved. See *id*. We review unpreserved issues for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

A defendant's claim that a jury's verdict was against the great weight of the evidence can only prevail if the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). A challenge to witness credibility is generally insufficient to warrant a new trial unless the "testimony contradicts undisputable facts or laws," the "testimony is patently incredible or defies physical realities," the "testimony is material and is so inherently implausible that it could not be believed by a reasonable juror," or the "testimony has been seriously impeached and the case is marked by uncertainties and discrepancies." *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998) (quotation marks and citations omitted).

Defendant argues that the evidence does not support that he strangled the victim. MCL 750.84(1)(b) states that a person is guilty if he or she "[a]ssaults another person by strangulation or suffocation." The statute defines strangulation or suffocation to "mean[] intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person." MCL 750.84(2).

Evidence admitted at trial supports the jury's conclusion that defendant strangled the victim. The victim testified that defendant picked her up by the neck, slammed her down, and then "choked me until I went to sleep." Photographs taken by Detroit Police Detective James Aude several days after the incident reveal marks on the victim's neck. Although the victim did not tell hospital staff about the strangulation, as evidenced by the medical records and her testimony at trial, she had several severe facial fractures that required surgery, and the severity of those injuries may have impeded the victim's ability to describe her injuries. The medical records also indicate that the victim was uncooperative during treatment, which suggests the victim may have simply chosen not to give the hospital staff all of the information she possessed. Looking at the medical records, we are unable to find evidence that preponderates against the conclusion that strangulation occurred. The victim's medical records indicate the presence of injury to her neck or throat area. Specifically, (1) the record titled "Trauma Physical Examination" shows a human diagram with a circle around the throat and a notation of "ecchymosis," which is a discoloration of the skin or tissue due to escaping blood from ruptured blood vessels, and (2) the record titled "Tertiary Trauma Survey" contains markings on a human diagram near and on the neck, some indiscernible notations and a note that there were a "few cuts" to the victim's neck, and the "normal" checkbox for the neck remains unchecked. The fact that the victim failed to report that she was strangled to hospital personnel is inconclusive as to whether strangulation occurred, especially considering that the victim had just experienced a traumatic assault and had extensive facial injuries, including a broken jaw.

Moreover, assault by strangulation does not require injury; it merely requires "intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck . . . ." See MCL 750.84(2). Defendant admitted during his police interview that he grabbed the victim's neck; although he later stated that he lied to the police when he gave that statement. Notwithstanding defendant's recantation, a reasonable juror could infer that defendant's admission that he grabbed the victim's neck meant that he intentionally impeded the victim's breathing or blood circulation. Leaving credibility determinations to the jury, we conclude that the evidence did not preponderate heavily against the jury's verdict.

## IV. PROSECUTORIAL SUPPRESSION OF EVIDENCE

Finally, in his Standard 4 brief, defendant argues that photographs of the victim's injuries taken by Crime Scene Services Officer Lori Nielsen were improperly withheld by the prosecution and would have contradicted the photographs taken by Aude. He also argues that Aude's photographs were improperly used to invoke sympathy from the jury. In order to preserve an issue for appellate review on the basis of the prosecution's suppression of evidence, a defendant must move for a new trial or for relief from judgement in the trial court. *People v Cox*, 268 Mich App 440, 448; 709 NW2d 152 (2005). Defendant did not move for either, so this issue is unpreserved. See *id*. This Court reviews due process claims, such as allegations of a *Brady*[1] violation, de novo. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534

---

[1] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

(2007). However, because this issue is unpreserved, our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

As a preliminary matter, defendant argues that Aude's photographs were prejudicial and were only used to arouse the jury's sympathy for the victim. Defendant did not object to the admission of these photographs at trial, and on appeal, he announces this claim without citing any relevant authority or explaining how Aude's photographs were unfairly prejudicial. Therefore, defendant has abandoned the issue on appeal. See *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004) (explaining that a party may not merely announce a position and leave it to this Court to rationalize and discover the basis for the party's claim). In any event, defendant's position defies logic. Defendant argues that Aude's photographs, which included pictures of the victim's injuries, were unnecessary and prejudicial, but that Nielsen's photographs, which included pictures of the victim's injuries and bloodstains, would have been less prejudicial. Reversal is not warranted on this basis.

Addressing defendant's claim that the prosecution improperly withheld Nielsen's photographs before trial, defendant is not entitled to relief.[2] In *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a *Brady* violation, a defendant must prove that: (1) the prosecution suppressed evidence, (2) the evidence was favorable to the accused, and (3) viewed in its totality, the evidence is material. *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. at 150. "To establish materiality, a defendant must show that there is a

---

[2] We note as an initial matter that this issue could be considered waived. At trial, it was revealed that Nielsen took photographs of both the victim and the crime scene the day after Aude took his photographs of the victim. When discussing the admissibility of Nielsen's photographs, defense counsel stated, considering his lack of prior knowledge of the photographs, "I think to allow those pictures in now would be extremely biased and prejudicial to the defense, and we would ask the Court not to admit." If defense counsel's objection applied to all of Nielsen's photographs, defendant cannot now argue that the photographs were necessary and relevant, and the issue could be considered waived on appeal. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000) (indicating that defense counsel's approval of a trial court's ruling constitutes a waiver of the issue on appeal). However, reading defense counsel's statement in context, it is not entirely clear whether he was arguing against the admission of all of Nielsen's photographs or only against Nielsen's photographs of the crime scene. Specifically, defense counsel made the noted statement after the prosecutor indicated that, "tomorrow when the scene photographs that have been referenced here on the stand ha[ve] been prepared and provided I would proceed to . . . move them into evidence as relevant and warranted." It is not clear whether the prosecutor's reference to "scene photographs . . . referenced here on the stand," and thereafter defense counsel's objection, included Nielsen's photographs of the victim.

reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. (quotation marks and citation omitted).

Even assuming the prosecutor improperly withheld Nielsen's photographs before trial, defendant cannot show that the photographs were favorable to his defense or that the photographs were material. Defendant argues that Nielsen's testimony indicates that the photographs would not show that the victim's neck had any marks, which would have supported defendant's argument that he did not strangle the victim. However, Nielsen's pictures were not taken until six days after the incident and one day after Aude took his photographs. Therefore, if Nielsen's photographs showed marks on the victim's neck, it would corroborate that strangulation occurred; if Nielsen's photographs did not show marks, the jury could reasonably attribute the lack of marks to the fact that the victim had additional time to heal. Moreover, Nielsen did not testify that the photographs did not show marks on the victim's neck, she merely testified that if the victim had strangulation marks, they "should have been in my pictures . . . ." Further, as already discussed, evidence of visible strangulation marks or injuries is not necessary under MCL 750.84(2), and substantial evidence supported that defendant strangled the victim. Defendant has not shown that Nielsen's photographs would be favorable to his defense or that there is a reasonable probability that the outcome of the trial would have been different if he had received the photographs before trial.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien

-6-