*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAKOTA JUSTIN BLUST,

        Defendant-Appellant.

UNPUBLISHED
November 15, 2024
8:59 AM

No. 365277
Macomb Circuit Court
LC No. 2022-000957-FC

Before: JANSEN, P.J., and RICK and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317; carrying a concealed weapon (CCW), MCL 750.227; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 25 to 50 years' imprisonment for second-degree murder; two to five years' imprisonment for CCW; and two years' imprisonment for felony-firearm. Defendant was ordered to serve his felony-firearm and CCW sentences concurrently, and his felony-firearm sentence consecutive with and preceding the second-degree murder sentence. We affirm defendant's convictions, but vacate defendant's sentences and remand for resentencing.

## I. FACTUAL BACKGROUND

Defendant's convictions arise from the murder of Andrew DeWulf. Defendant worked with DeWulf's fiancée, Aimee Fields. DeWulf and Fields had a turbulent relationship involving instances of physical abuse, which Fields confided to defendant. On July 3, 2021, Fields and DeWulf were drinking. After exchanging text messages with Fields and viewing a threatening message that DeWulf sent him over Facebook, defendant called the police, believing DeWulf was abusing Fields. Police arrived at Fields's home and left after determining that she was unharmed and in no apparent danger. Several hours later, defendant claimed that Fields called him and said that she had been arrested. Defendant drove to Fields's house, believing that he could enter the home and grab some money for Fields's bail.

Defendant took two guns with him to Fields's house. After arriving at the house, defendant got in an argument with DeWulf, who was living there at the time. Defendant went back to his

-1-

car, got in, and started the ignition. According to defendant, DeWulf came up to the driver's side door and attempted to cajole defendant into fighting him. Defendant pulled out a gun and pointed it at DeWulf. At one point during the altercation, DeWulf backed away from the car. Defendant testified:

> I lower my handgun from where I had it and I rest on my hip thinking, you know, thank God he's backing away, I get to leave. But, for whatever reason, he decides at that point to charge at me and lunge at me and whenever I see him charging at me that is when I pulled the trigger the first time. There's a big bright flash. I'm momentarily blinded and whenever the flash clears again, he's right there in front of me like to the point where I could only see him. I feel a slight weight or I feel weight on my gun and I pulled the trigger again.

Defendant shot DeWulf twice, killing him. He was thereafter arrested and charged with second-degree murder, CCW, and felony-firearm. Defendant moved to quash the information after his bindover, but the motion was denied. He then applied for leave to appeal in this Court and moved to stay lower court proceedings. This Court denied his application for leave to appeal and the related motion to stay.[1] Defendant was tried and convicted by a jury and sentenced as detailed above. This appeal followed.

## II. ANALYSIS

### A. JURY ISSUE

Defendant first argues the trial court erred when it referred to jurors by number rather than name because it compromised his presumption of innocence. We disagree.

To preserve his challenge to the trial court's reference to jurors by number rather than by name, defendant was required to object in the trial court. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). He did not do so, and thus, the issue is unpreserved. *Id*. We review unpreserved errors for plain error affecting a defendant's substantial rights. *Id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original).

"The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *People v Banks*, 249 Mich App 247, 258; 642

---

[1] *People v Blust*, unpublished order of the Court of Appeals, entered November 23, 2022 (Docket No. 363262).

NW2d 351 (2002) (quotation marks and citation omitted). "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Id*. at 258-259 (quotation marks and citation omitted).

"An 'anonymous jury' is one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). Anonymous juries "may promote the safety of prospective jurors, but at a potential expense to two interests of the defendant: (1) the defendant's interest in being able to conduct a meaningful examination of the jury and (2) the defendant's interest in maintaining the presumption of innocence." *Id*. at 522-523. However, "to successfully challenge the use of an 'anonymous jury,' the record must reflect that the parties have had information withheld from them, thus preventing meaningful voir dire, or that the presumption of innocence has been compromised." *Id*. at 523.

On appeal defendant explains that he is not contending that his rights were violated as a result of withholding of juror biographical information—indeed, it appears from the record that only the jurors' names were withheld from defendant. He instead contends that impaneling a jury and referencing its members only by the use of numbers infringed on his right to due process, in particular the presumption of innocence afforded to defendants at trial, because it suggested to the jury that he was a particularly dangerous defendant who posed a threat to the individual jurors.

"Under the presumption of innocence, guilt must be determined solely on the basis of the evidence introduced at trial rather than on official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *People v Rose*, 289 Mich App 499, 517; 808 NW2d 301 (2010) (quotation marks and citation omitted). In *Williams*, 241 Mich App at 524, this Court observed that "the use of an anonymous jury need not be interpreted [by jurors] as a sign that [the defendant] is particularly dangerous or culpable." (Quotation marks and citation omitted; alterations in original). "Rather, jurors are as likely to conclude their anonymity is designed to protect them from media or public pressures. Indeed, jurors who are unaware that anonymity is unusual are likely to draw no conclusions at all from the practice." *Id*. (citation omitted). This Court cautioned that there is a potential for prejudice arising out of the use of the anonymous jury procedure, but concluded that in general, the use of numbers instead of names, without more, does not undermine the presumption of innocence afforded to a defendant. *Id*. at 524-525.

Likewise, in *Hanks*, 276 Mich App at 92, this Court reiterated again that "[a] challenge to an 'anonymous jury' will only succeed where the record reflects that withholding information precluded meaningful voir dire or that the defendant's presumption of innocence was compromised." *Id*. at 93. This Court "strongly urge[d] trial courts to advise the venire that any use of numbers in lieu of jurors' names is simply for logistical purposes and they should not in any way consider it a negative against the defendant." *Id*. at 94. "There [was] no indication that any of the jurors believed that there was any significance in the use of numbers instead of names." *Id*.

In support of his argument, defendant refers to *United States v Sanchez*, 74 F3d 562, 564 (CA 5, 1996).[2] In *Sanchez*, the United States Court of Appeals for the Fifth Circuit held the trial court erred when it withheld the jurors' biographical information from the parties because there was no indication the defendant was dangerous or the jurors would be "subjected to the type of extensive publicity that might bring about intimidation and harassment." *Id*. at 565. Defendant argues that this reasoning should be applied here, which would result in circumscribing the trial court's ability to impanel an anonymous jury to situations of danger or harassment. But as in *Hanks*, 276 Mich App at 95, "defendant fails to acknowledge a subsequent Fifth Circuit case that held that withholding jurors' names and addresses did not rise to the level of an anonymous jury." See *United States v Branch*, 91 F3d 699, 723 (CA 5, 1996). Moreover, this Court "is bound by *Williams*," *Hanks*, 276 Mich App at 95, which in turn found *Branch* persuasive. See *Williams*, 241 Mich App at 523.

Similarly, defendant also relies on *State v Tucker*, 259 Wis 2d 484, 499-500; 2003 WI 12, ¶¶ 19-25; 657 NW2d 374 (2003),[3] to argue that "[w]hen jurors' names are withheld, as in this case, the circuit court, at a minimum, must make a precautionary statement to the jury that the use of numbers instead of names should in no way be interpreted as a reflection of the defendant's guilt or innocence." But in this matter, as in *Williams*, 241 Mich App at 524, there is "nothing in the record to indicate that the use of numbers undermined the presumption of innocence." Before the prospective jurors were brought in, the trial judge informed the parties: "I will tell this to the jurors when they get here also I want you each to refer to them either by their seat number or their juror number." She added: "They seem to prefer the belief of anonymity anyway, so please refer to them by seat number or juror number." Before voir dire, the trial court told the jury venire:

> And I also want to apologize and explain upfront that for 20-plus years I refer to jurors by either their juror number or their seat number. Nothing special about any of the cases. It's probably just a personal issue with me because I usually mispronounce people's [sic] names and I hate to keep doing that and I would just do it continually. So we use numbers so I apologize in advance. I don't want you to feel like you're a number but as it turned out the jurors kind of appreciated the anonymity and I don't get embarrassed having mispronounced peoples' names, so we will do that.

Nothing in the record suggests the trial court's actions undermined defendant's presumption of innocence. The trial court informed the jury venire it had the long-standing practice of referring to jurors by number. The trial court emphasized there was "nothing special" about any of the cases in which it applied this practice. In doing so, the trial court followed this Court's urging in *Hanks*, 276 Mich App at 94, to "advise the venire that any use of numbers in lieu

---

[2] "The opinions of lower federal courts are not binding on this Court, but those opinions may be considered for their persuasive value." *People v Head*, 323 Mich App 526, 540 n 1; 917 NW2d 752 (2018).

[3] "While [this Court] recognize[s] that [] out-of-state cases . . . are not binding on this Court . . . their reasoning [may] be persuasive." *People v Bell*, 276 Mich App 342, 349; 741 NW2d 57 (2007).

of jurors' names is simply for logistical purposes and they should not in any way consider it a negative against the defendant."

Based on the trial court's statements, jurors had no reason to believe anonymity was unusual or defendant was dangerous. The trial court elicited biographical information from the prospective jurors and the parties conducted meaningful voir dire. The trial court also instructed the jury to "start with the presumption that the defendant is innocent." It is well settled that "[j]urors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Accordingly, defendant has not met his burden to show plain error affecting his substantial rights. *Carines*, 460 Mich at 763.[4]

## B. PROPORTIONALITY

Defendant next argues the trial court abused its discretion because his within-guidelines sentence is disproportionate. We agree that the record does not contain a sufficient rationale to explain why the sentence imposed by the trial court was proportional here.

"[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality'[.]" *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). This "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 460 (quotation marks and citation omitted). Proportionality is "measured according to the offense and the offender, not according to the sentence's relationship to the guidelines." *People v Posey*, 512 Mich 317, 356; 1 NW3d 101 (2023).

In *Posey*, our Supreme Court recently held that "within-guidelines sentences are to be reviewed for reasonableness, but . . . the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate[.]" *Id*. at 359. "[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range[.]" *Steanhouse*, 500 Mich at 475 (quotation marks and citation omitted). Stated differently, *all* "sentences imposed by the trial court [must] be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 474 (quotation marks and citation omitted). "An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). Although our Supreme Court issued its ruling in *Posey* after defendant was sentenced in March 2023, we note that both parties proceed as though *Posey*

---

[4] Because this issue is unpreserved, we decline to address the portion of defendant's argument urging us to define the contours of a trial court's abuse of discretion in the context of anonymous juries. We remind defendant that *Williams* and *Hanks* have already set forth the definition of an anonymous jury, instructions for how anonymous juries are to be used, and a framework for understanding whether an anonymous jury has violated a defendant's due-process rights. In our minds, this obviates the need for further explanation. Moreover, our review of this matter is for plain error, not an abuse of discretion. See *Carines*, 460 Mich at 763.

retroactively applies. We therefore assume, without deciding, that defendant is entitled to a review of his sentence under the presumption of proportionality afforded to within-guidelines sentences under *Posey*.

Defendant's sentencing guidelines range was calculated at 180 to 300 months, or 15 to 25 years. The trial court sentenced defendant to 25 to 50 years' imprisonment, at the top of the guidelines range. In sentencing defendant, the trial court noted that it had read many letters from DeWulf's friends and family and clearly believed the psychological impact resulting from defendant's murder of DeWulf warranted sentencing him at the higher end of his guidelines range. The court additionally reasoned:

> [Defendant], the jury did find you guilty of murder in the second degree after a pretty extensive trial. They didn't buy the self-defense argument. And I know your attorney talked about two families suffering. There's no doubt about that, except one has a son and one doesn't.
>
> I acknowledge the implication that you were naive, but not naive enough to not bring some weapons and try and take things into your own hands. So, I think that thought process falls a little short when you get to the end of this story. So I believe you're a smart man. You weren't naive in terms of what you were going to do, what was going to happen that night. And, I think the sentence will reflect that.

Applying *Posey*, as we are required to do, we find that the court's reasoning was inadequate. Although the court considered the effect that defendant's actions had on DeWulf's family, it did not adequately explain why sentencing defendant at the top of the guidelines range was justified under the circumstances. We find this particularly concerning given that defendant had no significant criminal history, no history of substance abuse, and no history of mental health issues. He was gainfully employed before the shooting and in most respects appeared to be a well-adjusted individual. As we have stated, a sentence must be tailored to "the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 460 (quotation marks and citation omitted). At no point does the record reflect whether the trial court considered defendant's individual characteristics or the circumstances surrounding the offense, except to state that defendant was "not naïve" in bringing firearms to Fields's home on the night DeWulf was killed. This does not explain how defendant's sentence was proportionate, or how it met any of the goals of sentencing. See, e.g., *Steanhouse*, 500 Mich at 459-460; *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972). While we recognize that the trial court did not have the benefit of applying *Posey* when defendant was sentenced, defendant is entitled to review and resentencing under *Posey* at this time. On remand, the trial court should provide a more thorough rationale as to why defendant's sentence was reasonable and proportionate, given the circumstances of the offense and the offender, in accordance with *Posey*, 513 Mich at 356, and *Steanhouse*, 500 Mich at 475.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Michelle M. Rick
/s/ Sima G. Patel