*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTIAN ARMARI JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
September 30, 2025
1:15 PM

No. 370295
Oakland Circuit Court
LC No. 2021-278204-FC

Before: LETICA, P.J., and RICK and BAZZI, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions for first-degree felony murder, MCL 750.316(1)(b), assault with the intent to commit murder (AWIM), MCL 750.83, and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to concurrent terms of life without parole for first-degree murder[1] and 20 to 50 years' imprisonment for AWIM, to be served consecutively to the mandatory two-year prison terms imposed for the accompanying felony-firearm convictions. On appeal, defendant argues: (1) there was insufficient evidence to support in his first-degree felony-murder conviction because the evidence did not show the killing occurred during the course of the predicate felony of larceny; (2) the trial court violated defendant's due-process rights when it impaneled an anonymous jury without providing a cautionary instruction; and (3) the trial court erred when it did not conduct an evidentiary hearing regarding defendant's motion to suppress his custodial statements. We affirm.

---

[1] Because defendant was twenty years old when he committed the murder, we recognize that he will be resentenced under our Supreme Court's recent decisions in *People v Taylor* and *People v Czarnecki*, ___ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 166428 and 166654).

# I. BACKGROUND

This matter arises from shootings occurring on June 2, 2021. On May 31, 2021, defendant and Aurelius Williams (Williams) stole a Jaguar with a gun inside. At that time, Williams was wearing a GPS tracker, documenting his movements.

On the morning of June 2, 2021, Williams contacted a sex worker, KA, and arranged for her services at the Baymont Inn. While at the inn, Williams and defendant's plan changed. They decided to rob KA. Defendant had the gun from the stolen Jaguar when they went to the room. After KA saw defendant with the gun, she screamed and yelled that he had a gun. KA's boyfriend came out of the bathroom and defendant shot him in the face, killing him. As KA fled the room, a bullet grazed her back shoulder.

Defendant and Williams fled and drove to their home in the Jaguar. Videotape secured from the inn depicted defendant wearing a Northville Track and Field jacket[2] and leaving the hotel with Williams in the stolen vehicle.

Defendant and Williams soon abandoned the Jaguar a block from the home that they shared with their girlfriends. From the alley where the Jaguar was abandoned, the police secured more video footage depicting defendant and Williams. And, despite defendant's and Williams's later attempts to clean the Jaguar, fingerprints belonging to Williams were found on the driver's trim and hood and one fingerprint belonging to defendant was found on the trim of the rear passenger door.

The police arrested Williams at their shared home and found the murder weapon in the backyard. They also found a credit card in defendant's name and a letter addressed to defendant, which provided a second address for him. On June 2, 2021, video footage from the second address showed defendant leaving, wearing the same Northville high school jacket, pants, a mask, and a winter hat as the shooter depicted on the videotape from the inn.

Williams, like defendant, was charged with first-degree murder, AWIM, and two counts of felony-firearm. Williams agreed to plead *nolo contendere* to manslaughter and AWIM, as a fourth habitual offender, MCL 769.12, and testify against defendant in exchange for concurrent sentences of 15 to 50 years' imprisonment.

At trial, defendant posited that Williams had falsely implicated him rather than identify the actual perpetrator, who was one of Williams's relatives. After deliberating for less than an hour, the jury convicted defendant as charged. This appeal followed.

---

[2] Defendant's sister later testified that she failed to turn in her school-issued jacket because it was missing. And defendant's sister's coach confirmed that she did not return the jacket even though she returned other school-issued items.

## II.  INSUFFICIENT EVIDENCE

Defendant argues the prosecution presented insufficient evidence of a larceny to sustain his felony-murder conviction.  We disagree.

## A.  STANDARD OF REVIEW

"This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). "In analyzing [a] sufficiency claim[], this Court must review the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Powell*, 278 Mich App 318, 320; 750 NW2d 607 (2008) (quotation marks and citation omitted).  "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## B.  ANALYSIS

As already discussed, defendant was convicted of felony murder.  In relevant part, the statute prohibiting murder provides that "a person who commits any of the following is guilty of first degree murder: . . . [m]urder committed in the perpetration of, or attempt to perpetrate . . . robbery . . . [or] larceny of any kind . . . ."  MCL 750.316(1)(b).  This Court has held:

> The elements of felony murder are (1) the killing of a person, (2) with the intent to kill, do great bodily harm, or create a high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of an enumerated felony.  [*Lane*, 308 Mich App at 57-58.]

Robbery and larceny are enumerated felonies.  See MCL 750.316(1)(b).

In this case, defendant was charged with open murder, MCL 750.318, and convicted of felony murder, MCL 750.316(1)(b).  Given the open murder charge, the trial court instructed defendant's jury to consider whether, when defendant "did the act that caused the [shooting victim's] death . . ., [he] was committing or attempting to commit or helping someone else commit the crime *of armed robbery*."  (Emphasis added.)

The armed robbery statute, MCL 750.529, provides:

> (1) A person who engages in conduct proscribed under [MCL 750.530] and who in the course of engaging in that conduct does any of the following is guilty of armed robbery:

> (a) Possesses a dangerous weapon.

(b) Possesses an article used or fashioned in a manner that would cause a reasonable person to believe the article is a dangerous weapon.

(c) Represents orally or otherwise that he or she possesses a dangerous weapon.

In turn, MCL 750.530 states:

(1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

(2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

On appeal, defendant contends that, despite Williams's testimony that their plan was to rob KA of money at gunpoint, no larceny was committed because she screamed before there was any demand for money or property. Thus, defendant maintains that the murder victim "was not killed during the uninterrupted chain of events surrounding the commission of the larceny." We disagree.

Again, the underlying felony involved in this case was armed robbery, not larceny, as argued by defendant. Regardless, the felony-murder statute prohibits not only murders committed during the commission of the predicate felony, but also during an attempt to commit the predicate felony. MCL 750.316(1)(b). Furthermore, for purposes of establishing the commission or attempt to commit armed robbery, the phrase " 'in the course of committing a larceny' includes acts that occur in an attempt to commit the larceny. . . ." MCL 750.530. Thus, it was not required for the larceny to be completed as defendant contends.

Moreover, viewed in the light most favorable to the prosecution, the inn's videotape footage, Williams's testimony, and KA's testimony establish that defendant was armed and in the course of committing a larceny when he shot and killed KA's boyfriend. More specifically, Williams scanned KA's room when he arrived and left under the pretense of retrieving a condom. He returned to the stolen Jaguar and discussed robbing KA with defendant. Defendant, dressed in black, masked, gloved, and holding a loaded gun, accompanied Williams back to KA's room. Defendant then entered the room behind Williams, causing KA to scream and call out that he had a gun. At that point, defendant was committing armed robbery because he was in the course of committing a larceny and possessed a dangerous weapon. See *People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007). See also MCL 750.529, and MCL 750.530. Thus, while committing the predicate felony of armed robbery, defendant shot and killed KA's boyfriend. See *Lane*, 308 Mich App at 57-58. Accordingly, the prosecution presented sufficient evidence of the predicate offense of armed robbery to support defendant's felony-murder conviction.

## III. ANONYMOUS JURY

Next, defendant argues referring to jurors by number rather than by name violated his right to due process. We disagree.

## A. STANDARD OF REVIEW

Defendant must object in the trial court to preserve a challenge to the trial court's reference to jurors by number rather than by name. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). Because defendant did not object to the trial court's referring to the jurors by their numbers, this issue is not preserved. *Id*.

Generally, "[t]he [trial] court's decision to refer to jurors by number rather than name is a decision concerning the conduct of voir dire, which [this Court] review[s] for [an] abuse of discretion." *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). But, "[t]his Court reviews unpreserved issues, constitutional and nonconstitutional, for plain error." *Hanks*, 276 Mich App at 92. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original).

## B. ANALYSIS

"The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *People v Banks*, 249 Mich App 247, 258; 642 NW2d 351 (2002) (quotation marks and citation omitted). "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Id*. at 258-259 (quotation marks and citation omitted). "Under the presumption of innocence, guilt must be determined solely on the basis of the evidence introduced at trial rather than on official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *People v Rose*, 289 Mich App 499, 517; 808 NW2d 301 (2010) (quotation marks and citation omitted).

"An 'anonymous jury' is one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *Williams*, 241 Mich App at 522. The use of an anonymous jury runs the risk of undermining the parties' ability to conduct a meaningful examination of the jury and the defendant's interest in maintaining the presumption of innocence. *Id*. at 522-523. "In order to successfully challenge the use of an 'anonymous jury,' the record must reflect that the parties have had information withheld from them, thus preventing meaningful voir dire, or that the presumption of innocence has been compromised." *Id*. at 523. A due process challenge to an anonymous jury will only succeed when "something more than just the jurors' names is withheld from the parties." *Hanks*, 276 Mich App at 93.

In *Williams*, the defendant argued that the trial court violated his due-process rights by empaneling an anonymous jury when referring to the jurors by number rather than by name.

*Williams*, 241 Mich App at 522. This Court concluded the defendant's due-process rights were not violated when the jurors were referred to by number rather than by name because no evidence was presented that any information regarding the jurors was withheld from the parties, compromised the defendant's ability to effectively examine the jurors, or undermined the presumption of innocence. *Id*. at 523- 524. This Court emphasized that a key factor of an anonymous jury is that "certain biographical information about potential jurors is withheld" from the parties. *Id*. at 523 (quotation marks and citation omitted). This Court further determined:

> [T]here is nothing in the record to indicate that the use of numbers undermined the presumption of innocence. There is no suggestion that jurors understood the use of numbers rather than names to be anything out of the ordinary. Thus, there was no suggestion that [the] defendant's trial was being handled in a special way, with the resulting implication that he was generally dangerous or guilty as charged. *Id*. at 524.

Thus, the "defendant's due process rights were not violated by using juror numbers instead of names at trial." *Id*.

Similarly, in *Hanks*, the defendant argued that the trial court's policy of referring to jurors by number rather than by name violated his due-process rights and entitled him to a new trial. *Hanks*, 276 Mich App at 92. This Court concluded that the parties' ability to conduct a meaningful voir dire was not undermined by the practice because the record reflected that the juror questionnaires containing the jurors' biographical information were provided to the parties and the parties conducted extensive voir dire. *Id*. at 94. This Court also concluded that there was nothing in the record to support the conclusion that the defendant's presumption of innocence was undermined simply because the jurors were not referred to by name. *Id*. And this Court concluded that the jury was anonymous "only in a literal sense, so none of the dangers of an 'anonymous jury' was implicated." *Id*.[3]

In this case, nothing in the record suggests defendant lacked meaningful biographical information about the jurors. To the contrary, the record reveals that voir dire was probing and that information about the jurors' backgrounds was available. Further, as in *Hanks*, 276 Mich App at 94, "[t]here [was] no indication that any of the jurors believed that there was any significance in the use of numbers instead of names." On this record, defendant has failed to establish any error, let alone plain error, and, therefore, he is not entitled to relief.

---

[3] Defendant's reliance on *United States v Sanchez*, 74 F3d 562 (CA 5, 1996), and *State v Tucker*, 259 Wis2d 484; 657 NW2d 374 (2003), is misplaced. These cases were addressed in *Hanks*, which rejected the defendant's claim that *Williams* was wrongly decided. *Hanks*, 276 Mich App at 95-96. Under MCR 7.215(J)(1), we are bound to follow *Williams* and *Hanks* rather than the non-binding opinions of an intermediate-level federal court and another state. See *People v Head*, 323 Mich App 526, 540 n 1; 917 NW2d 752 (2018); *People v Bell*, 276 Mich App 342, 349; 741 NW2d 57 (2007).

## IV. EVIDENTIARY HEARING

Lastly, defendant argues the trial court erred when it denied his motion for an evidentiary hearing to suppress his custodial statements. More specifically, defendant moved for an evidentiary hearing under *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965), seeking to suppress statements he made during a police interview. Although the matter was scheduled for an evidentiary hearing, the trial court, which had reviewed the interview videotape in advance, rejected defendant's contention that he had unequivocally invoked his right to counsel.

On appeal, the parties argue about the trial court's actions without recognizing that there was no testimony or evidence offered during defendant's trial about his police interview. In other words, even if we were to conclude that the trial court erred in its decision not to hold a full evidentiary hearing, the remedy, if defendant prevailed, would have been suppression of his post-invocation statements. *People v Harris*, 261 Mich App 44, 53; 680 NW2d 17 (2004). Again, at trial, none of defendant's statements were admitted, and, therefore, any error in failing to hold a *Walker* hearing was harmless. MCL 769.26 ("No judgment or verdict shall be set aside or reversed or new trial granted by any court of this state in any criminal case, . . . for error as to any matter of . . . procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.").

Affirmed.

/s/ Anica Letica
/s/ Michelle M. Rick
/s/ Mariam S. Bazzi